IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| **W.B.S.S., L.P.** § | Case No. 06-60464 | |
| xx-xxx4302 § | | |
| P. O. Box 1180, Big Sandy, TX 75755 § | | |
| § | | EOD |
| Debtor § | Chapter 11 | 03/13/2007 |

## MEMORANDUM OF DECISION

This matter came before the Court for final hearing of the remaining issues raised in the "Amended Motion of the Lewie Byers Group for Relief from Stay Against Profit A' Prendre (Right to Mine Sand) and All Improvements Attached to the Real Property and to Allow Appeal of State Court Judgment to Proceed" filed by Lewie Byers, Harold Byers, Dewey McCreary, Forrest Williams, Dick Cayce, Jr., the general partnership among such individuals and I-20 Sands, LLC (collectively the "Movants") on December 22, 2006, and the objection thereto filed by the Debtor, W.B.S.S., L.P. ("Debtor").[1] At the conclusion of the final hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[2]

---

[1] The original motion by the Movants was filed on November 1, 2006. The parties had previously agreed to the entry of an interim order which by agreement modified the automatic stay to allow the continued prosecution of the Debtor's state court appeal of the judgment rendered in favor of the Movant prior to the commencement of this case.

[2] This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (G), and (O).

*Factual and Procedural Background*

The facts pertinent to this contested matter are not really in dispute. On February 15, 1999, the general partnership existing among Lewie Byers, Harold Byers, Dewey McCreary, Forrest Williams, and Dick Cayce, Jr., executed an "Easement and Profit A' Prendre Agreement"[3] with Wright Brothers Specialty Sands, another Texas general partnership,[4] granting to that entity the right to mine and remove sand from certain tracts of real property located in Smith County, Texas, for a designated royalty payment. The Debtor and/or its predecessors-in-interest have extracted sand from such properties since that time and such extraction operation is presently the primary business of the Debtor, W.B.S.S., L.P.

On May 16, 2006, the 7th Judicial District Court in and for Smith County, Texas, issued a judgment in favor of the Movants and against the Debtor and other affiliated entities in the amount of $1,963,586.30, plus post-judgment interest upon such an amount, arising from a finding that the Defendants had mined sand beyond the geographic bounds of the property described in the profit a' prendre agreement.[5] The

---

[3] Exhibit P-1.

[4] The rights under this Agreement were transferred to the Debtor on November 13, 2006 — a date subsequent to the filing of the petition in this case. See Exhibit P-7. Though such a transfer may be avoidable from the perspective of the transferor, any dispute regarding such transfer need not be resolved by this Court in order to reach the result in this contested matter.

[5] Exhibit P-2.

judgment was properly abstracted by the Movants on the following day.[6] That action imposed a judgment lien upon the Debtor's real property interests located in Smith County pursuant to TEX. PROP. CODE §52.001 to secure the payment of the judgment.

In lieu of filing a supersedeas bond to preclude enforcement of the judgment lien pending appeal,[7] the Debtor initiated this Chapter 11 reorganization case on August 14, 2006. Though the parties have previously agreed to modify the stay to allow the appeal to proceed, the Movants now assert that they are entitled to relief from the automatic stay to allow them to foreclose their judgment lien upon the Debtor's property.[8] They assert that the Debtor has no intent to pursue a legitimate reorganization effort, but rather merely seeks to maintain the benefits of the automatic stay to preclude the foreclosure of the Movants' judgment lien without the necessity of meeting the supersedeas requirements while it: (1) seeks to overturn the judgment on appeal, and (2) continues to gain the revenue derived from the continued extraction of sand from the referenced property. The Debtor asserted at the hearing that its real property interests upon which the Movants' judgment lien has attached are necessary for an effective reorganization of its business.

---

[6] Exhibit P-19.

[7] Generally, a judgment lien arising under Texas law may be superseded by the posting of security by the judgment debtor pursuant to TEX. CIV. PRAC. & REM. CODE §§52.001 et seq. and TEX. R. APP. P. 24.

[8] The Movants bring this motion under both §362(d)(1) and (2). Finding the existence of adequate grounds for relief from stay under §362(d)(2), a §362(d)(1) analysis is unnecessary.

*Discussion*

11 U.S.C. §362(d) states as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if —
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization.

Hence, there are two basic methods by which a movant may seek relief from the automatic stay.[9]

Under 11 U.S.C. §362(d)(2), relief from the stay of an act against property shall be granted if the debtor has no equity in the property and the property is not necessary to an effective reorganization. While the Movants bear the burden of proof on the issue of equity in the collateral, the Debtor bears the burden of proof on all other issues. 11 U.S.C. §362(g). Since it is uncontested that there is no equity in the collateral, the only question for the Court under a §362(d)(2) analysis is whether the collateral is necessary to

---

[9] Actually, there is also a third method, 11 U.S.C. §362(d)(3), which deals only with "a stay of an act against single asset real estate," which is not applicable to this case.

an effective reorganization.

While the Debtor's continued utilization of its property rights granted under the profit a' prendre agreement is obviously necessary for its sand extraction operations to continue in order to produce the income required to fund a future plan of reorganization, that logical necessity is singularly insufficient to carry the burden of proof under §362(d)(2). To meet its burden, the Debtor must additionally demonstrate by a preponderance of the evidence that there is a "[r]easonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988).

In the context of an ongoing litigation dispute in which a judgment debt continues to be challenged through the appellate process, that standard cannot be met merely by the possibility that the legitimacy of the challenged claim might be ultimately reversed by a successful appeal. Instead a judgment debtor must demonstrate that it has invoked the protections under the Bankruptcy Code in good faith by engaging in a genuine effort to facilitate a reorganization which addresses the contested judgment debt. It is such an effort which legitimizes the utilization of the automatic stay as a surrogate for a supersedeas bond under state law.

Thus, when opposing a request to terminate the stay in this context, the judgment debtor must demonstrate that, having been given the opportunity to address the judgment liability under the protection of the court, it is actually conducting post-petition operations in a manner that precisely reflects such an intent, including in its promulgation of a proposed plan of reorganization, coupled with an economic ability to accomplish that intent. An evidentiary record which nullifies either places the judgment debtor in a precarious position from which to advocate for the continuation of the automatic stay.

In the present case, while proposing to stay current on its monthly contractual payments to all other holders of secured claims during the pendency of the case, the Debtor's proposed plan of reorganization proposes to address the Movants' contested secured claim through the establishment of a "disputed claim reserve" which will be funded by quarterly installments "equal to the sum of 90% of the Excess Cash Flow from the Debtor's operations from the preceding annual quarter."[10] The accrued payments into the disputed claim reserve shall be held in trust for the Movants until a final, nonappealable judgment is actually rendered for their benefit. If that final, nonappealable judgment reduces the claim to an amount not exceeding $1,000,000, the plan proposes for the

---

[10] The remaining 10% of the Excess Cash Flow is designated for the class of general unsecured creditors. This 90-10 split might create some confirmation problems except for the fact that, other than the Movants, the Debtor has no general unsecured creditors. No party other than the Movants are listed as unsecured creditors in the Debtor's schedules and only one secured party other than the Movants have even bothered to file a timely proof of claim for possible payment of an undersecured claim.

Debtor to continue its business operations and to make to the Movants the prescribed quarterly installments equivalent to 90% of the excess cash flow until the claim, plus interest, is paid in full. However, if the final, nonappealable judgment exceeds $1,000,000, the proposed plan provides that the Debtor will cease business operations within 30 days, convey to Movants all assets subject to the judgment lien, disperse to the Movants all of the funds in the Disputed Claims Reserve, and thereafter tender 90% of the value of other designated assets to the Movants which remain "after payment of outstanding post-petition payables incurred in the ordinary course of business."

Upon consideration of the totality of the circumstances presented in this case, the Debtor has failed to demonstrate that it possesses an actual, genuine intent to address the judgment debt of the Movants. While the promulgation of a plan with a disputed claim reserve provision may constitute a legitimate structure by which to address a disputed debt still subject to appellate review, the Debtor was compelled to show that its economic proposal to address the disputed claim was viable in light of its clear intent to continue its ongoing efforts to mine sand during the pendency of the appeal, all to the detriment of the value of the Movants' collateral, and particularly in the light of the substantial monthly compensation being paid to the Debtor's principals from the company's operations. It wholly failed to do so. While proffering a plan to place 90% of its excess cash flow into

a disputed claims reserve for the Movants, the evidence presented at the hearing demonstrates that the Debtor's proposal is illusory and, even if an honest intent is presumed, the Debtor does not possess the economic ability to accomplish the stated goal. The definition of "excess cash flow" in the proposed plan subordinates the payments to the disputed claim reserve to virtually every imaginable type of expense and then raises the bar even further by placing significant discretion in the hands of the Debtor's management to reserve additional moneys "for the continuance and maintenance of ongoing operations. . . ."[11] Even without these impediments, the evidence further establishes that the Debtor has not made a net profit since August 2006 – its first month in bankruptcy – and its net cash flow (as generically computed in the U.S. Trustee's monthly operating reports) has been substantially in the negative for three of the five reported

---

[11] §2.27 of the proposed plan defines "excess cash flow" as follows:

For any period, EBITDA less (i) principal payments made during the fiscal period, excluding all post-petition payments on unsecured debt during either the bankruptcy case or pursuant to this Plan, (ii) interest payments made during the fiscal period, excluding all post-petition payments on unsecured debt during either the bankruptcy case or pursuant to this Plan, (iii) capital expenditures, (iv) current taxes (income, franchise, sales, or property), (v) costs of the Bankruptcy Case, including professional fees, during the fiscal period, and (vi) amounts necessary to be held in reserve in the discretion of the Debtor for the continuance and maintenance of ongoing operations and obligations taking into consideration the seasonal fluctuations of Debtor's business operations.

EBITDA is defined by §2.24 of the proposed plan as:

the sum of (i) pretax earnings from continuing operations, (ii) interest expense and (iii) depreciation, depletion, and amortization of tangible and intangible assets, before (a) special extraordinary gains, (b) minority interest, and (c) miscellaneous gains and losses, in each case for such period, computed and calculated in accordance with GAAP.

months.

Rather than address the likelihood of a successful reorganization, the Debtor merely demonstrated that it has timely paid the royalties which are due to the Movants under the profit a' prendre agreement for the post-petition extraction of sand from the property and asserted that, in light of such payments, it should be given an opportunity to proceed through the Chapter 11 confirmation process. However, the Debtor mistakenly confuses the post-petition payment of contractual royalties with adequate protection payments which under a §362(d)(1) analysis would be necessary to protect the Movants, in their capacity as the holders of a secured claim, from a diminution in the value of the Debtor's property interest which secures that claim. Further, even without such a mischaracterization of the royalty payments, the issue of tendering adequate protection payments to obtain access to the confirmation process, and the issue of demonstrating by a preponderance of the evidence a reasonable possibility of achieving an effective reorganization within a reasonable time, are not the same.[12]

---

[12] Neither did the Debtor address whether feasible means exist by which it *could* possibly overcome the obstacles to the confirmation of a plan in this case — obstacles which are significant in what could honestly be described as a two-party dispute between the Movants and the Debtor. The possible impact of an §1111(b) election, as well as numerous problems associated with an anticipated necessity to invoke cramdown under §1129(b), such as the necessity of a non-gerrymandered accepting impaired class and compliance with the absolute priority rule of §1129(b)(2)(B), were wholly ignored by the Debtor at the hearing. While the Debtor may complain about the necessity of revealing potential future tactics for obtaining confirmation in this context, that is the scenario which is often presented when stay relief under §362(d)(2) is contested in what is essentially a two–party Chapter 11 case.

Thus, as framed by the Court during closing argument, the Court has been left to decide on the basis of the evidence presented whether this is a legitimate reorganization effort by the Debtor or simply, as the Movants contend, an illegitimate attempt by the Debtor to freeze any collection attempt on the unsatisfied judgment while pursing its appeal and continuing to "mine the money" available through the operation of its sand extraction business. The evidence compels a finding of the latter. As the Fifth Circuit has stated, "[t]he mere indispensability of the property to the debtor's survival and the debtor's hopes of reorganization are insufficient to justify continuation of the stay when reorganization is not reasonably possible." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs. (In re Timbers of Inwood Forest Assocs.)*, 808 F.2d 36, 370-71 (5th Cir. 1987), *aff'd*, 484 U.S. 365 (1988). The Debtor has failed to demonstrate that such a reasonable possibility exists.

Accordingly, the Amended Motion of the Lewie Byers Group for Relief from Stay Against Profit A' Prendre (Right to Mine Sand) and All Improvements Attached to the Real Property and to Allow Appeal of State Court Judgment to Proceed filed in the above-referenced case is hereby granted and the automatic stay is hereby terminated so as to allow the Movants to exercise any and all legal remedies which they may possess in order to enforce their judgment lien.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[13] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 03/13/2007

*Bill Parker*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[13] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.